Curia, per

Frost, J.
The will of Henry Taylor was admitted to probate by the Ordinary of Beaufort district, on proof of the handwriting of John P. Williamson, (then deceased) one of the three subscribing witnesses. Williamson was appointed executor of the will, but took no legacy or devise.
The will disposed of both real and personal property; but the question in this case arising on an appeal from the court of Ordinary, affects only the disposition of the personal property. For devises of land being exclusively of Common Law jurisdiction, and wills of personal property peculiarly belonging to the jurisdiction of the Ecclesiastical Court, or court of Ordinary, the provisions of a will are, by the respective courts, considered exclusively in reference to file property which is the subject of its jurisdic *534 tion | so that the grant or rejection of probate of a will of personal property, is not evidence in an issue between the heir and devisee — nor is a verdict on such an issue in the common law courts, evidence in the court of Ordinary. (a)
The case then presents the question, whether one appointed executor without any legacy or devise, is a competent attesting witness to a will of personal property, under the Act of 1824. (b)
The Statute of Frauds (c) provides that all devises of lands, “ shall be attested and subscribed by three or four credible witnesses.”
In precisely the same terms, the Act of 1824 requires that all wills of testaments of personal property shall “ be attested and subscribed by three or more credible witnesses.” '
The use of the same terms in describing the qualification of the attesting witnesses, requires that in this particular the two Acts should receive the same construction.
By the term ‘ credible,’ as applied to witnesses in the Statute of Frauds, is to be understood “ competent.” Neither the Act of 1824, nor the Statute, requires the devise or will to be proved, but attested, by three or four credible witnesses. This presents an obvious difference between attestation and the proof of that attestation. Accordingly in Hindson vs. Kersey (d) Lord Camden affirms that the great inquiry in this question is, how the will ought to be attested, and not how it ought to be proved. The pew thing introduced by the Statute, is the attestation. The method of proving this attestation, stands as it did at common law.” This is the received construction of the Statute of Frauds; and it is now well settled law, that credible means competent, and that the competency of the witness has reference to the time of attestation. The same construction must be applied to the Act of 1824.
The only objection to the competency of Williamson as *535 an attesting witness, is made on the ground that, as executor, he had an interest to support the will. The rules of evidence on this point are the same in the Ecclesiastical as in the Common Law Courts. In neither, is an interested witness received, to testify in his own favor. All the cases from the Ecclesiastical courts shew, that a witness taking an interest or legacy under a will which he is called to support, must be restored to competency by a release or extinguishment. But certainly, in the Courts of Ordinary, in this State, the rules of evidence respecting the competency of witnesses, on the ground of interest, must conform to those of the Common Law courts. The provisions of the Act of 1839, (e) respecting the duties of the Ordinary, require, that in case of the probate of a will in common form, if the attesting witness cannot be produced to prove its execution, such secondary evidence as is admissable by the rules of the common law, shall be resorted to. An appeal to the Court of Common Pleas from the decision of the Ordinary, on probate of a will of personal property, in which the case shall be tried anew, with such additional testimony as the parties may procure, necessarily enforces a conformity in the rules of evidence. Besides, the construction of all Statutes! is exclusively the province of the common law courts ; and if the Ecclesiastical court should proceed otherwise than in conformity with the construction of those courts, a prohibition would lie. (f)
It is conceded, that an executor who takes no legacy, nor the residue, nor other interest under the will, is a competent witness in an issue between the heir and devisee ; because, as already explained, he can have no interest in the event of such an issue. It may also be conceded, that prior to the Statute of 1 Victoria, c. 26, (g) an executor, with the like exemption of interest, or who had released, and who was not a necessary party by having made probate of the will, was admitted in the Ecclesiastical courts, in support of a will of personal property. But his competency, in both courts, is supported on the ground^ that an executor in *536 England takes a mere naked trust and burdensome office. (h)
N But in this State the executor is entitled to commissions, which create an interest in the appointment. It is not denied, if a legacy is given to an executor, for his care and trouble in executing the will, that such an interest would render him incompetent. Bat a distinction is taken between that case and this, because the executor’s commissions are given by law, and in payment for services rendered, according to the measure of those services. It cannot be disputed, that the office of an executor is an appointment yielding emolument; and, as such, a subject of pecuniary interest and of generally acknowledged value: All offices of profit are encumbered with the performance of duties, to which the compensation is incident. In a contested election for such an office, neither of the candidates would be received as a witness ; for it could not be doubted that he had an interest in the question. The residue not disposed oí by the will, in England, vests in the executor by the act of the law, yet such an interest makes him an incompetent witness in support of the will. A Statute of North Carolina declares, that a devise shall not be valid, if any one of the witnesses be interested in the devise. In Allison’s Executors vs. Allison, (i) it was held, that an attestation by the devisee in trust, with a provision for compensation in executing the trust, avoided the will within the Statute.
It is argued, that the interest is too contingent and remote to affect the competency of the executor. But commissions are not so contingent as the residue ; that the executor may die before the testator, or the will be revoked, are risks common to both. The commissions are certain if neither of those risks happen; but the residue may fail from deficiency of assets.
If all the contingencies which may defeat any benefit from the residue, are not sufficient, in law, to make the ex *537 ecutor competent, the chance that the law allowing him commissions, may be repealed, cannot have that effect. For though the law be alterable, a possible change is not an event which the courts recognize as a contingency affecting present interests. It is the design of the Act of 1824 to guard the execution of wills of personal property, by removing all temptation of interest from the witnesses to whom it commits the testator in the final disposition of his worldly goods. A legacy or benefit given by a will creates a present interest at the time of its execution, which may be defeated in certain contingencies. The present interest predominates, in the act of attesting and subscribing the will. The temptation of an executor or legatee to practice fraud or imposition on a testator in extremis, would not be much lessened by any of the contingencies which are relied’ on to maintain his competency.
It is further contended, that if the commissions would disqualify an executor from being an attesting witness, the interest or benefit is made void, and his competency restored, by the statute 25 Geo. 2, c. 6. (k) That statute provides “ that if any person shall attest the execution of any will or codicil, to whom any beneficial devise, legacy, estate, interest, gift, or appointment, of or affecting any real or personal estate, other than and except charges on lands, &c. for payment of any debt or debts, shall be thereby given or made, such devise, &c. shall, so far only as concerns such person attesting the execution of such will or codicil, or any person claiming under him, be utterly null and void, and such person shall be admitted as a witness to the execution of such will or codicil, within the intent of said Act; notwithstanding such devise,” &c.
The authority of this statute, though more than once referred to in the decisions of this State and recognized as of force, is now disputed, principally on the grounds, that it was not inserted by Judge Grimke, in his collection of the “Public Laws;” and that some cases to which'its provisions applied, have been decided without reference to them; and that the Parliament of Great Britain possessed no authority to legislate for the internal affairs of the Colonies.
*538 It is n~t material to inquire why it was not inserted in the "Public Laws," if it can be shewn that it should have been.
"An Act for the better regulating the Court of Common Pleas," &c. passed in 1737, (l) vests in that court "all and singular the powers, &c. in all civil causes within this Province, in as full and ample manner as the Courts of Common Pleas, E~t Westminster, exercise ;" with a proviso, that the Act shall not "be construed to give any power or authority to the said court to execute or put in force any statute of Great Britain, wherein the plantations in America are not particularly and specially named; or which do not, by the intent and purview of such statute, extend to the said plantations." "An Act to supply the defects in evidence where original wills cannot b~ produced," &c. passed in 1759, (m) recites the statute 29 Car. 2d, c. 3, and the statute 25 Geo. 2d, c. 6, as made to extend to the Colonies, where the said statute 29 Car 2d, had been received as law, and as having "the same force and effect in the construction of, or for the avoiding of doubts upon, the said Act of the twenty-nipth of King Charles the second, in the said Colonies, as in England." And also reciting that many persons, having real estate in the Province, might depart this life, out of this Province, "leaving wills made agreeable to the said Acts," proceeds to enact that an authenticated probate of the will may be received in evidence in such cases.
The constitutions of 1776, (n) 1778 (o) and 1790, (p) provide that all laws of force shall so continue, until altered or repealed by the Legislature.
These Acts unequivocally recognize the authority of. the British Parliament to legislate for the colonies, and the binding force of all statutes in which ~he Colonies are particularly named, and especially of the statute 25 Geo. 2, c. 6. In 1 Story's Commentaries, (q) it is affirmed, on the authority of Marshall, Pitkin and `Jefferson, that "in the Middle and Southern Provinces, no question respecting the supremacy of Parliament, in matters of general legis *539 lation, existed.” It was declared by ¡the Congress of the nine Colonies, assembled at New York, in October, 1765, (r) in which South Carolina was represented, that the colonists “ owe the same allegiance to the Crown of Great Britain that is owing from his subjects, born within the realm, and all due subordination to that august body, the Parliament of Great Britain.” But it is added, there is a material distinction in reason and sound policy, between the necessary exercise of Parliamentary jurisdiction, in general Acts for the amendment of the law, and the regulation of trade and commerce through the whole Empire, and the exercise of that jurisdiction by imposing taxes on the Colonies, thus admitting the former' to be rightful, while denying the latter. It was not until after the year 1774, and after absolute independence was in the full contemplation of the Colonies, that an utter denial of all Parliamentary authority was maintained.
Whether this recognition of the Parliamentary jurisdiction over the Colonies was conformable to abstract theories of government, it is not important to inquire. It is sufficient that such jurisdiction was acknowledged, at the time this statute was recognized. The force of the Act, at this time, is not affirmed on the admission of the power of Parliament, but on the ground of its enactment by the Colonial Legislature. In the Act of 1759, the statute of George the second is affirmed, as of equal effect with the statute of frauds, which had been expressly enacted; and by the Act of 1737, the Court of Common Pleas is empowered to enforce it. On much less authority, the statute of 5 Geo. 2, c. 7, (s) “for the more easy recovery of debts in his Majesty’s Plantations and Colonies in America,” was admitted by Judge Grimke into his collection of “ Public Laws,” and has universally been received in practice; the only recognition of that statute being found in a reference to it, in the insolvent debtors’s Act, as furnishing the form of an affidavit. At the time that the constitutions of 1776, 1778 and 1790 were adopted, the statute of 25 Geo. 2, was of *540 force, and all doubts respecting its validity, are settled by the supreme authority of those instruments.
The authority of this statute is supported by frequent judicial recognitions of it. Snelgrove vs. Snelgrove, (t) was a bill for the partition of the estate of Henry Snel-grove, by the heirs, against William Snelgrove, the devisee. The will was executed in the presence of three subscribing witnesses, of whom the defendant was one. It was held that credible, in the statute of frauds, means competent, and refers to the time of attestation, and that the attestation of William Snelgrove was a “ mere nullity.” The case of Anstey vs. Dowsing, (u) was affirmed as “ exactly conformable to the rules of the common law.” To the argument, that though William Snelgrove could not prove the will in his own behalf, he might do so in behalf of his co-defendants, to whom he had sold part of the land devised, the Chancellor replies, of rvhat avail would that be to the defendant in this case. “He is sole devisee, in fee, of the land of the testator, and if he can only be let in to prove the will by the devise to him being void, he might as well lose the devise by not proving the will, as by giving up his devise to be admitted a witness. Quacunque via data, he must lose it.”
The operation of the statute is admitted by an express reference to it in the former part of the decree, in connection with the case of Anstey vs. Dowsing, and the effect of the statute is plainly acknowledged, when it is affirmed that the competency of William Snelgrove could only be restored by making void the devise. It is explained how the statute could have no application for the benefit of the defendant, since it was immaterial to him whether he lost the land devised, by the forfeiture of the statute, or for want of a sufficient attestation of the will. Another case is that of Woodberry vs. Collins’s Ex’or s. (v) which was a bill by a legatee for life, against the executor, for the delivery of certain negroes, bequeathed to her by the will of J. Collins. Her husband was one of the attesting witnesses. The first question made in this case was, whether the legacy *541 to complainant was void, agreeably to the statute of 25 Geo. 2. The decree intimates, but does not affirm, the competency of the attesting witness, on the ground of his interest being contingent; and that he was dead at the time of the decree, and could take no benefit from the bequest. It was also argued that “the will had been proved in a court of competent jurisdiction and “had the legacy been sued for in the court where the will was proved, it must have been adjudged to the complainant.” It is further urged that “the will would have been good without any witness at all.” The conclusion of the decree is, “ that under all the circumstances of the case, and the particular mode by which the bequest is made,” by which the interest of the husband is merely contingent, and “ that as no act of his gave efficacy to the will, but it was proved by witnesses altogether competent, therefore, the statute can have no operation in this case, but that the bequest is a good one.” The case does, therefore, expressly recognize the statute ; and decides that the bequest was good, because the will, being of personal property, was valid without any attesting witness, and, therefore, not within the provisions of the statute.
In Richardson vs. Richardson, (w.) the statute is affirmed to be of force, though that question did not necessarily arise in the case.
In Loxondes vs. Lowndes, a circuit decree not appealed from, it was also affirmed.
Against these authorities the only case that can be adduced, is that of Dickson vs. Bates, (x.) That was an action of trespass to try title. The plaintiff claimed under a will to which all the .subscribing witnesses were legatees, and he was non-suited. On appeal the non-suit was affirmed. The reporter adds, the Judges “observed,” that if the legatees had released, their competency would have been restored. From this very loose and imperfect note of the case, and from what the Judges “observed," no inference can be supported that the Statute was not then of force. The dictum, made obviously without argument or *542 consideration, cannot be allowed any weight in opposition to the cases cited to the contrary.
As well by legislative as judicial recognition, the statute is of force.
It is contended that if the right to commissions be such an interest as makes the executor an incompetent attesting witness, the interest or benefit is made void by the statute of 25 Geo. 2, and his competency restored.
Wills of persona] property are not within the mischief or remedy of the statute, since at the time the statute was passed, and when it was adopted in this Province, no attesting witnesses were required to the execution of them. The statute of frauds was never understood to extend to will» of personal property; and' the attestation of a witness, in the English Ecclesiastical Courts, prior to the statute 1 Victoria, c. 26, as in our Court of Ordinary, prior to the Act of 1824, was a mere nullity. The Ecclesiastical Court did not regard the attestation of the will, nor refer the competency of the witness to that period, but only looked to the prof of the will, and the competency of the witness at the time his evidence was offered, and if then incompetent, his competency might be restored by a release of any interest or the removal of any disqualification which might then affect him. Brett vs. Brett, (y.) In this case Sir John Nicholl says, if a will of personal property is attested by subscribing witnesses, who are also legatees, the attestation is considered void, and each witness is regarded “in the double character of a subscribing witness and legatee; not in the light of no legatee in law, but in that of no subscribing witness.” And “if of two subscribing witnesses to a will one is a legatee, the affidavit of one person is required to probate of the will in common form, as if the will were subscribed by a single witness. If both subscribing witnesses are legatees, an affidavit of two persons to handwriting is then required, just as it would be if - the will were wholly unattested.” In Cartwright vs. Cartwright, (z.) Sir Wm. Wynne, in delivering judgment, affirms that even when the will is contested it is not necessary for the party propounding the will to call the attesting witness.
*543 But three or four credible witnesses being required by the statute of frauds, to attest and subscribe devises of land, the common law courts looked to the competency of the witness at the time of attestation. If then competent, though disqualified from giving evidence at the time the due execution of the will was at issue, by subsequently acquired interest or infamy, the attestation was good ; and on the contrary, if not then competent, for any cause, by no release ofhis interest or removal of other disqualifying circumstance before the time of trial, could the incompetency be removed, (a.) To get over the common law difficulty, the statute of Geo. 2d. makes void all beneficial interests to attesting witnesses to devises of lands; and thereby prevents that they should ever be incompetent to prove the execution of a devise of land by reason of any benefit they might take by the will.
It. seeems clear that,such was the intention of the statute. The title expresses its object to be “the putting an end to certain doubts and questions, relating to the attestation of wills and codicils, concerning real estates.” The preamble, in pursuance a'nd more full explanation of the title, recites the requirement of the statute of frauds, that all devises and bequests of lands shall be attested by three or four credible witnesses, and that doubts “had arisen who are to be deemed legal witnesses within the intent of the said Act.” It is well known that after the passing of the statute of frauds, questions and doubts respecting who where credible witness, within its intent, divided the profession and the courts, and created great alarm for the safety of titles to real estates acquired by devise. In Anstey vs. Dowsing, which was decided in 1746. C. J. Lee, with the Judges of the Common Pleas, held that credible witnesses meant legally competent, and that the competency related to the time of attestation, and that incompetency, existing at the time of attestation, by reason of interest or infamy, or for any other cause, could not be restored by a release or other removal of disqualification. This decision *544 seems not to have received the assent of the profession. On the contrary, Lord Mansfield, with the Court of King’s Bench, held in Windham vs. Chetwynd, (b.) decided in 1757, a case arising before the statute, that credible, in the statute, was to be understood merely in its popular sense, as importing respectable and worthy of belief, and admitted to proof a will attested by three legatees. Lord Camden added the authority of his great name to the decision of Anstey vs. Dowsing. It was to compose these grave dissensions that the statute was passed, and its ¡mo-visions are directed to the settlement of the vexed and agitating questions. The history of the statute thus confirms the intention so clearly expressed in the title and preamble.
The general rules for the construction of statutes are various and not very consistent. Thus in Copeman vs. Gallant, (c.) Lord Cowper would by no means allow that the preamble should restrain the enacting clause, which opinion Lord Hardwicke, in Ryall vs. Rowles, (d.) disapproved. Judge Blackstone, in his commentaries, (e.) directs, as the first rule for the construction of statutes, to consider the mischief and the remedy, and enjoins it as the duty of Judges to suppress the mischief and ad vanee the remedy. The rule is exemplified by the statute of Elizabeth, making void all leases by ecclesiastical persons for a term exceeding twenty one years. The mischief intended to be prevented was the undue appropriation of Glebe land by the incumbent, in the grant of long leases, to the prejudice of his successor. The statute was construed not to avoid the lease during the life time of the lessor, though the term extended beyond twenty-one years. Our recording Acts afford another striking illustration. To this controlling principle all rules must be subordinate. To insist that the enacting clause cannot be restrained by the manifest intention, expressed in the title and preamble and otherwise clearly ascertained, is to sacrifice the end to the rules by which it should be attain *545 ed, and is subject to the censure of Lord Coke, “qui hceret in litera hceret in cortice”
The mischief intended to be cured by the statute of 25 Geo. 2, being expressed in the title and preamble and confirmed by its history, the enacting clause proceeds, that “if any person shall attest the execution of any will or codicil,” “to whom any beneficial devise, legacy, estate, interest, gift or appointment, of or affecting any real or personal estate,” “shall be thereby given,” “such devise (fee. shall, so far only as it concerns such person attesting the execution of such will” &c. be void; and “such person shall be admitted as a witness to the execution of such will or codicil, within the intent of the said Act.”
It is to be noticed that the statute provides that if the attesting witness to “any tvill or codicil” shall take a benefit thereby, the benefit shall be void. Because to “any \Vill or codicil,” it is not added, “devising land,” it is assumed that the statute extends to wills of personal property. The manifest intention, apparent from all the provisions of the statute, would seem sufficient to repel such a construction, and if Judge Blackstone’s rule be applied, it would settle the question. But the construction may be repelled by the very letter of the statute, and it be shewn that the enacting clause itself is limited in its operation to devises of land. The whole effect and design of the enacting clause are expressed in the last member of it, making such person as may attest and take a beneficial devise <fec. a witnes to the execution of such will, within the intent of the said Act. “The said Act,” that is, the statute of frauds, makes an attesting witness necessary only to devises of land. The clause only restores the competency of attesting witnesses to wills within the intent of “the said Act” — “such will or codicil,” therefore mean a will or codicil devising land.
The other sections of the Act confirm this view. The second section enacts that a creditor may attest the execution of any will or codicil, charging lands with debts. This section is confined, in terms, to devises of land.
The third section provides that a legatee who shall attest any will or codicil, having been paid, or having re *546 leased, his legacy, may prove the execution of it. This was very important to devises of land, but unnecessary with respect to wills of personal property, since such witness was not necessary to prove the execution of it, and even if he were, the payment or release of his legacy would have restored, his competency.
The fifth section enacts that if a legatee, who shall attest any will or codicil, shall die in the life time of the testator, or before he shall have been paid or released his legacy, he shall be deemed a legal witness to the execution of such will. This also has no application to wills of personalty.
It is to be observed that every section mentions only attesting witnesses, and-make them competent to prove the execution of the will, thereby confining the operation of the statute to those doubts and questions of evidence which are recited in the preamble.
But whatever question may be made respecting the construction of this statute in England, the terms in which it is extended to the Colonies are clear of the ambiguity which raises a question on the first section. The tenth section recites that whereas in some of the British Colonies the statute 29 Car. 2d. has been received for law, “whereby the attestation and subscription of witnesses to devises of lands,” are required, “therefore, to prevent doubts which may arise in the Colonies in relation to the attestation of such devises of lands” it is enacted that the statute shall extend to such of the said Colonies where the said Act of 29 Car. 2d. is made of force, “or where, by Act of Assembly or usage the attestation and subscription of a witness or witnesses are made necessary to devises of lands,” ■ and shall have the same effect for avoiding doubts upon such Acts of Assembly and laws of said Colonies, as for avoiding doubts upon the statute 29 Car. 2d. in England.
In this section the operation of the statute is expressly limited to the avoiding of doubts respecting the attestation of devises of lands, whether under the statute of frauds or other law of the Colonies, requiring the attestation of such devises, ■ and it is declared to have the same effect in the construction of such Acts of the Colonies, as in construing *547 the statute of frauds in England. By an obvious and necessary relation, this section manifests the intention of the Parliament to confine the words, “any will or. codicil” in the first section, to devises of land, for it declares the law extended to the Colonies, to be the same as that made by the statute for England. But whether this construction be adopted or not, is immaterial, since the operation of the statute, when extended to the Colonies, is expressly limited to devises of land, so that whether the letter or the intention of the statute prevail, as the rule of construction in this State, wills of personal property are not included in its provisions.
When it is considered that every section of the statute provides for the competency of the attesting witness to the execution of any will or codicil, by making void any benefit he may take under it, in order that devises of land should not fail, and that the attestation of a will of personalty is a mere nullity, and that in all cases in which the statute mades void any benefit taken by the attesting witness under the will, in order to restore his competency, an attesting witness to a will of personal property is not necessary to prove its execution, and that the interests which are made void by the statute may be released or extinguished at any time before such witness may be called to support the will, to extend the operation of the statute to wills of personal property, does seem to be worse than a vain thing. It was very important that devises of land should be preserved, and if Parliament saw fit to preserve them by the forfeiture of the interest of the attesting witness, at least a great measure of public policy was served, but in regard to wills of personal property the forfeiture would be inflicted without any compensating public good.
The question whether this statute extended to wills of personal property was first made in 1811, in the case of Lees vs. Summersgill, (f) and Sir Wm. Grant decided that it did. The case illustrates the useless hardship of such a construction. There was no contest about the will. The bill was filed by the residuary legatee against *548 the executor for an account. The defendant, who was an attesting witness, claimed to be allowed a specific legacy-given by the will. It was taken for granted in the argument that his evidence was not necessary to prove the execution of the will. But the legacy was decreed to be forfeited by the statute. Sir William Grant put the decision on the ground that the first section extended to “any will or codicil,” and could not be restrained by the intention expressed in the title and preamble • but principally on information received from the practitioners in Doctors Commons, that the statute was, in the practice of that court, received to be of force; for the point had never, even then, been decided in that court. In Brett vs. Brett, Sir John Nicholl reversed the decision of Sir Wm. Grant, on the ground that no such practice had ever prevailed in the Ecclesiastical Court as Sir Wm. Grant had assumed. This case has been confirmed by Emanuel vs. Constable, (g) and Foster vs. Banbury, (h) and is well established law. These authorities are supported by Woodbury vs. Collin’s executors.
But it may be argued, that though prior to the Act of 1824, the stat. 25 Geo. 2 did not extend to wills of personal property; yet that, by construction, its provisions should be extended to that Act. All law derived from legislative enactment, must proceed from the will of the legislature, expressed or necessarily implied. The authority to subject wills of personal property under the Act of 1824, to the operation of the statute 25 Geo. 2, cannot of course be derived from any expression of intention by the legislature, in adopting that statute in 1759. It could not have anticipated an Act passed 60 years afterwards. No such intention is expressed in the Act of 1824, nor can it necessarily be implied. If it is to be presumed, in giving effect to legislative acts, that the law, however obscure or unknown to its professors, was fully present to the attention of the legislature, then the settled construction of the statute, as limited to devises of land, must have been known, and the *549 omission, by express enactment, to extend its provisions to the Act of 1824, should be construed to exclude them.
It may be admitted, that all statutes in pari materia, are to be construed together. But real and personal properly are not more distinct in their existence, than the rules of law which govern the transfer and succession to them. The law relating to each, forms a distinct system. It cannot, therefore, be affirmed that a statute relating to devises of land, by necessary implication as being in pari materia, should extend to bequests of personal property. It does not follow, that because, in 1759, the legislature would preserve a devise of land, by making void any interest of the attesting witness under the will, that bequests of personal property should be maintained by the same sacrifice. The law of primogeniture, which vested the whole real estate in the heir male, made the power to dispose of lands by will to other objects of the testator’s regard, very valuable. Sufficiently so, as a matter of public interest, to forfeit any interest of the attesting witness for the accomplishment of the will. But the equitable partition of real and personal property, by the law of this State, among those nearest in blood and affection to the possessor, in a great measure relieves intestacy from hardship.
When, by the statute 1 Victoria, c. 26, wills of personal property were required to be attested in the same manner as devises of land, the provisions of the stat. of 25 Geo. 2, were by express enactment extended to them also. This is high authority that the stat. of Geo. 2d, cannot be construed to extend to wills of personal property. To do so by judicial construction, will effect that for which an Act of Parliament was necessary. When it is doubtful, even, whether a statute extends to objects beyond its clear and express terms, a judicial construction so extending it, partakes very much of the character of legislation. This it seems most proper to refer to the appropriate department of the government.
The opinion of a majority of the court is, that one appoint- v ed executor, by his right to commissions, takes an interest ¡ by the will, which renders him an incompetent attesting wit-J ness under the Act of 1824; and that the stat. 25 Geo. 2, *550 c. 6, is of force in this State, but the competency of the attesting witness is not thereby restored.
The decision of the circuit court is reversed, and it is ordered that judgment be entered on the special verdict in favor of the appellants, from the decision of the Ordinary.
Johnston and Dunkin, CC. concurred.
Richardson, J. * and Harper, Ch. were absent at the hearing.
O’Neall, J.
In this case I agree that the executor, John P. Williamson, was an incompetent witness to the will, whether the statute of 25 Geo. 2, c. 6, is or is not of force; and in that point of view, the decision that it is of force, is unnecessary to this case, and would therefore be no authority ; yet,' as successive uncontradicted dicta have an influence to make that law, which never would be so regarded without them, I propose to state, briefly, the reasons why I think it is not of force in this State.
It is true, that the stat. 25 Geo. 2 c. 6, (a) in terms declares that it shall bind the Colonies ; yet, standing alone on that, I should not be disposed to say it ever had the effect of law in South Carolina. South Carolina had her own legislature, and the Acts passed by it had the operation of law. The only restraint upon this power was that of the crown ; but such a thing as two legislative bodies clothed with power to make laws on the same subject, did not then exist. But there is no necessity to pursue this farther. For I admit, from the recitation in the Act of 1759, (b) that if there was no subsequent legislation varying the matter, that might be regarded as an authoritative acknowledgment that it was of force.
But I think the Acts of 1789 (c) and 1824, (d) have established laws of our own, independent of the stat. 29 *551 Car. 2, c. 3, regulating the execution of wills; and that, therefore, the statute of Geo. 2, which was intended to explain the statute of Charles, cannot be regarded as applying to subsequent laws enacted without any, even the slightest, reference to it.
The only case acknowledging the statute to be of force, until very recently, is that of Woodberry vs. Collins, (e) In that case the will was made in !86 — the testator died in ’89 — but whether before or after our Act on the subject of wills, which was passed March ’89, does not appear. From that that case down tq Richardson vs. Richardson, (f) there is not even a hint in one of the cases, that the statute is of force. By universal consent, it seems to have been treated as if it were not. Judge Grimke, in his Law of Executors, 71, 72, 73, gives the stat. 25 Geo. 2, c. 6, at length; and on the 73d page makes these remarks, “ although it never has been judicially determined whether this Act is of force, and operates with us, and that 1 had such great doubts upon it, notwithstanding the declaration in the 10th section, as not to insert it hi the compilation of the Public Laws, yet finding that there is a very great difference in opinion amongst the gentlemen of the bar, concerning the same, I have inserted it here, for the satisfaction of those who consider it as of force — and to give those of adverse sentiments a further opportunity of canvassing the subject, and bringing it one day or other to a legal decision.” He also states that Mr. Lining, the Ordinary of Charleston, had assured him there never had been but one case in which the objection could have arisen and there, the legatee witness renounced the legacy and was sworn. Egan vs. Egan: That case began in ’86, and was decided in ’88, before the Act of ’89 ; and surely, if it was so doubtful then whether the statute was of force, as to require a renunciation of the legacy by the witness, the doubt was increased tenfold by the Act of ’89.
Our Act of ’89, in the 2d and 3d sections, authorizes all persons — except feme coverts, persons of unsound mind, and infants — to make wills, and prescribes the mode and *552 manner of execution. These provisions are without any reference to previous enactments, and stand, therefore, as constituting an entire system. It is true, the 3d section is nearly, though not exactly, a transcript from the statute of Charles 2d. If the legislature. had intended that the statute of Geo. 2 should have been also the law, is it not probable, when they introduced the provision of the statute of Charles into a new Act, that they would also have re-enacted it ? I have no doubt of it, and Judge Grimke might therefore very well exclude it from his publication of the laws. The facts, that he did so exclude it, and that in ’97 he expressed the doubt which he did in his Law of Executors — and that for more than 40 years no case can be found in which it is declared to be of force — constitute Such an array against it, that I think it would be hazarding a great deal for the court to say it was of force. It would be little short of the court exercising legislative powers.
But cases can be found which have proceeded upon principles utterly irreconcilable with the. notion that the stat. 25 Geo. 2, c. 6, was of force.
In Dickson vs. Bates, (g) all the witnesses were legatees, and it was held that they were incompetent, and that the will could not be proved. This was in 1802 ; if the stat. of Geo. had then been regarded as of force, no such decision could have been made. For if it were of force, then the legacies were void, and the witnesses competent.
In Snelgrove vs. Snelgrove, (h) Chancellor DeSaussure, whose learning and ability would have led him to point the country to this statute if it had been of force, passes it by without any such intimation, although he had occasion to comment on it, and decided that the witness was incompetent, who, possibly, might have been competent if the statute had been of force. This, Chancellor Harper states and concedes, in Richardson vs. Richardson, and in his circuit decree, on that ground, declines to hold the statute to be of force. The Court of Appeals, in the same case, simply say, arguendo, we see no ground that the statute *553 should not be held to be of force. That was no decision that it was of force, and the view now taken was not looked to in deciding that case. So far as authority is concerned, it seems to me that the case of Garland et al. vs. Crow, (i) is decidedly against the statute being regarded as of force. See the MS. opinion on file, December, 1830. There, the witnesses were legatees, and the court entered into a minute calculation, to shew that they took less under the will than they would as distributees; and hence, that they were good witnesses, as swearing against their interest. If the statute were of force, their legacies were void, and they were good witnesses. Hence, the case is against the idea that the statute is of force. The force of authority is against the argument, in Richardson vs. Richardson.
But independent of authority, the statute of Geo. 2 in its terms refers to, and was intended to- explain doubts on, the statute of Charles 2. How such an Act can apply to a subsequent Act, such as that of 1789, is difficult to conceive; but if that difficulty can be got round by construing the Act of 1789, and the statutes of Car. 2, and Geo. 2, as in pari materia, what is to be said of the Act of 18241 It is upon a subject, personal estate, to which the statute of Charles did not at all extend.
How the statute of Geo. 2 can make legacies to witnesses void under it, I confess is á question which I cannot legally answer ; and, therefore, I conclude it does not.
To hold the statute of Geo. 2, now to be of force, will lead to incalculable mischief. Legacies will be made void, and children will be stripped of every thing, by wills to which they may have incautiously put their names as witnesses. The case of Garland vs. Crow will be an illustration. There the witnesses had legacies or devises in remainder, after the death of their mother. They were held to be good witnesses, taking less under than against the will. Suppose the tenant for life to be now alive — at her death, what will be the situation of the witnesses ? They will be told, (if the statute of Geo. 2, be of force) you proved the will — the legacies or devises to you are void, *554 and, therefore, you lose your entire portions of your father’s estate. Could such injustice be tolerated, especially when it is known to result from judicial construction, giving life to an English statute which had been dead and buried, in this State, for more than sixty years ?
Every consideration satisfies me that the statute of 25 Geo. 2, c. 6, is not of force; and having stated my views, I have discharged the duty which, as a public magistrate, I owe to the people; and if, on a case involving the question, and necessary to its decision, it be decided that the statute is of force, no one will more faithfully enforce the decision than I shall. But until then, I hope it will be regarded as an open question, and that the learning and talent of the bar will be devoted to its examination, so that on some future occasion a true and just conclusion may be attained.

 Crosland's Executors vs. Murdoch, 4 M‘C. 217; Bogardus vs. Clark. 4 Paige, 623; Clark vs. Dew, 1 Russ. &. Mylne, 109.

 6 Stat. 238.

 2 Stat. 525.

 See Lord Camden’s opinion, in 1 Day, 41, note.

 11 Stat. 41.

 Lady Chester’s case, 3 Keb. 30, and other cases collected in 5 Bac. Ab. 675, Tit Prohibition,

 Vide Lovelass on Wills, chap. 2, sec. 3, p. 296, 25 Law Lib. 159.

 Fowler vs. Welford, 1 Doug. 139 ; Fountain and Coke, 1 Mod. 107 ; Goss vs. Tracy, 1 P. Wms. 287, 90; Bettison vs. Bromley, 12 East, 250; 3 Phillimore, 334, 577.

 4 Hawks N. C. Rep. 141.

 2 Stat. 580.

 7 Stat. 189.

 4 Stat. 101.

 1 Stat. 134.

 1 Stat. 144.

 1 Stat. 190.

 Page 174.

 Vide 1 Story’s Commentaries, 175-6-7.

 2 Stat. 570; P. L. 250.

 4 Dess. 274.

 2 Stra. 1253.

 1 Dess. 424.

 Dud. Eq. 184.

 2 Bay, 448.

) 3 Add. Ecc. Rep. 210.

) 1 Phillimore, 90.

) Anstey vs. Dowsing, 2 Stra. 1253; Helliard vs. Jennings, 1 Ld. Ray. 505 ; Old, vs. Old, 4 Dev. 500 ; Hawes vs. Humphrey, 9 Pick. 350; Snelgrove vs. Snelgrove, 4 Des. 274.

) 1 Burr. 414.

) 1 P. Wms. 320.

) 1 Ves. Sr. 365.

) 1 Com. 87.

 17 Ves. 508.

 3 Russ. 436.

 3 Simons, 40.

 Grimke’s Law of Executors, 161, 2 Stat. 580.

 4 Stat. 101.

 5 Stat. 106, Grimke’s Law of Executors, 30; 2d and 3d sections of the Act of 1789.

 6 Stat. 238, 7th section of the Act of 1824.

 1 Dess. 424.

 Dud. Eq. 184.

 2 Bay, 448.

 Dess. 274.

 2 Bail. 24.